UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LAWRENCE THOMAS,

    Petitioner,

v.

ERICA HUSS,

    Respondent,

_____/

Civil No. 2:18-CV-11628
HONORABLE SEAN F. COX
UNITED STATES DISTRICT JUDGE

## OPINION AND ORDER DENYING THE PETITION FOR WRIT OF HABEAS CORPUS AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY OR LEAVE TO APPEAL *IN FORMA PAUPERIS*

Lawrence Thomas, ("petitioner"), confined at the Carson City Correctional Facility in Carson City, Michigan, filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, in which he challenges his conviction for first-degree felony murder, Mich. Comp. Laws § 750.316(1)(b); two counts of assault with intent to commit murder, Mich. Comp. Laws § 750.83; felon in possession of a firearm, Mich. Comp. Laws § 750.224f; escape from lawful custody, Mich. Comp. Laws § 750.197a; and possession of a firearm in the commission of a felony, Mich. Comp. Laws § 750.227b. For the reasons that follow, the petition for writ of habeas corpus is DENIED.

### I. Background

Petitioner was convicted following a jury trial in the Wayne County Circuit Court. This Court recites verbatim the relevant facts regarding petitioner's conviction from the Michigan Court of Appeals's opinion, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See e.g. Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009):

> Defendant's convictions arise from a shooting incident during the early morning hours of August 17, 2014, at Chevelles Bar & Grill ("Chevelles") on the west side

1

of Detroit. At closing time, after the bar's lights were turned on signaling that it was time to leave, Kenneth Davis and his friends began to make their way toward the entrance. According to witnesses at trial, defendant grabbed Davis's designer glasses off his face. Defendant then produced a gun and fired into the crowd. Davis was grazed by a bullet. Jessica Porter was fatally shot in the head. Latris Rucker was also shot, but recovered from his injury.

The defense theory at trial was that defendant was misidentified as the shooter. Neither Davis nor the Chevelles bartender, Chaloea Smith, were able to identify defendant in a photographic lineup, but they both identified defendant as the shooter at a subsequent corporal lineup and at trial.

*People v. Thomas*, No. 328534, 2017 WL 378727, at * 1 (Mich. Ct. App. Jan. 26, 2017).

Petitioner's conviction was affirmed. *Id., lv. den.* 501 Mich. 862, 901 N.W.2d 98 (2017).

Petitioner seeks a writ of habeas corpus on the following grounds:

I. The trial court clearly erred by not excluding the identification of the petitioner by Kenneth Davis and Chaloea Smith at a corporeal lineup.

II. The defense counsel in this matter provided unconstitutional, ineffective assistance of counsel when, amongst other errors, they (A) failed to investigate Kenneth Davis, his alleged and suspicious police stop and EMS contact and failed to call any of Mr. Davis's associates, especially Aaron Brown, Dwight, and Mr. Ricker's mother, as witnesses; and (B) failed to try and find any of the other witnesses who made statements after the shooting, including the DJ or any security guards at the bar.

III. Petitioner's felony-murder conviction is not based on a conviction of an underlying felony and it must be vacated.

## II. Standard of Review

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11. "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011)(citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). To obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103.

### III. Discussion

**A. Claim # 1. The suggestive identification claim.**

Petitioner argues that the trial court erred in denying his pre-trial motion to suppress the identification testimony of Davis and Smith, claiming that they were subjected to suggestive identification procedures.

3

Davis and Smith were unable to identify petitioner as the shooter in photographic arrays, although Smith identified petitioner in a crowd photo that was taken during the evening in question at Chevelles. Petitioner was positively identified by Smith and Davis in subsequent corporeal lineups. Petitioner argued that the corporeal lineups were impermissibly suggestive because he was the only person in the lineups whose photo had been included in the photo arrays that were previously shown to Davis and Smith. Petitioner also appears to argue that the photographic show-ups were somehow suggestive because the police purportedly only showed the witnesses one photograph at a time of the persons in the array, rather than showing them six photographs of the persons in the same display. Petitioner also claims that the live lineups were impermissibly suggestive because the Chicago Bulls jersey that he was wearing during the lineups linked him to the shooter, who was wearing a Chicago Bulls baseball cap inside Chevelles. Petitioner also argues that the corporeal lineups were suggestive because he was the tallest person in the lineup.

Due process protects the accused against the introduction of evidence which results from an unreliable identification obtained through unnecessarily suggestive procedures. *Moore v. Illinois*, 434 U.S. 220, 227 (1977). To determine whether an identification procedure violates due process, courts look first to whether the procedure was impermissibly suggestive; if so, courts then determine whether, under the totality of circumstances, the suggestiveness has led to a substantial likelihood of an irreparable misidentification. *Kado v. Adams*, 971 F. Supp. 1143, 1147-48 (E.D. Mich. 1997)(citing to *Neil v. Biggers*, 409 U.S. 188 (1972)). Five factors should be considered in determining the reliability of identification evidence:

      1. the witness's opportunity to view the criminal at the time of the crime;
      2. the witness's degree of attention at the time of the crime;
      3. the accuracy of the witness's prior description of the defendant;

      4. the witness's level of certainty when identifying the suspect at the confrontation; and,
      5. the length of time that has elapsed between the time and the confrontation.

*Neil v. Biggers,* 409 U.S. at 199-200.

    If a defendant fails to show that the identification procedures are impermissibly suggestive, or if the totality of the circumstances indicate that the identification is otherwise reliable, no due process violation has occurred; so long as there is not a substantial misidentification, it is for the jury or factfinder to determine the ultimate weight to be given to the identification. *See United States v. Hill*, 967 F.2d 226, 230 (6th Cir. 1992).

    Petitioner failed to show that the witnesses' in-court identification was the product of a suggestive pre-trial identification. Indeed, "the Supreme Court has never held that an in-court identification requires an independent basis for admission in the absence of an antecedent improper pre-trial identification." *Cameron v. Birkett,* 348 F. Supp. 2d 825, 843 (E.D. Mich. 2004). Moreover, "the Due Process Clause does not require a preliminary judicial inquiry into the reliability of an eyewitness identification when the identification was not procured under unnecessarily suggestive circumstances arranged by law enforcement." *Perry v. New Hampshire*, 565 U.S. 228, 248 (2012).

    Petitioner first argues that the identification procedure was somehow tainted because the witnesses at the initial photographic array were shown one photograph at a time of six persons, rather than having all six photographs of the participants displayed all at once. Petitioner admits that neither witness positively identified petitioner at the photographic array but nonetheless argues that this procedure somehow tainted their subsequent corporeal and in-court identifications.

5

"Although identifications arising from single-photograph displays may be viewed in general with suspicion," *Manson v. Brathwaite*, 432 U.S. 98, 116 (1977), the police in this situation did not conduct a single photographic display but instead showed the witnesses the pictures of six potential suspects, albeit one at a time. The identification procedure here was not suggestive or even the equivalent of a single photographic display because it was "the functional equivalent of a large photograph array." *See e,g. United States v. Moore*, 240 F. App'x. 699, 706 (6th Cir. 2007).

To the extent that petitioner argues that it was suggestive to have Smith identify petitioner from a photograph taken at Chevelles on the night of the shooting, his claim is without merit. "[L]ittle possibility of misidentification arises from the use of photographs depicting 'the likeness not of some possible suspect in the police files, but of the [persons] who actually committed the [crime].'" *United States v. Monks*, 774 F. 2d 945, 957 (9th Cir. 1985) (quoting *United States v. Evans*, 484 F. 2d 1178, 1186 (2nd Cir. 1973)). To refresh a witness' memory from a source [that depicts the actual perpetrator of the crime] runs "a significantly smaller risk of misidentification than to refresh it from a source unrelated to the actual events." *Evans,* 484 F. 2d at 1186. In this case, it was not impermissibly suggestive for Ms. Smith to view a photograph which depicted petitioner inside of the bar at the time of the shooting. *See United States v. Bridgefourth*, 538 F. 2d 1251, 1253 (6th Cir. 1976); *see also United States v. Peterson,* 411 F. App'x. 857, 865 (6th Cir. 2011) (police officer's inquiry whether eyewitness could identify bank robber from photo array was not unduly suggestive, in violation of defendant's due process rights, even if witness viewed photographs of robber in newspaper before identification; photograph of robber in newspaper was taken from bank's security camera during commission of robbery and would have been no different than what witness saw at bank).

Petitioner's main contention was that the witnesses' subsequent positive identifications at the corporeal lineups were tainted because the witnesses had previously participated in the prior photographic arrays.

First, the mere fact that Smith and Davis failed to identify petitioner at the initial photographic lineups did not require the suppression of their identification of petitioner. An earlier failure to identify a defendant, or even a positive identification of a different suspect, does not require the exclusion of an in-court or pretrial identification, if the identification is otherwise reliable. *See Howard v. Bouchard,* 405 F. 3d 459, 484 (6th Cir. 2005) (collecting cases). The witnesses' failure to previously identify petitioner at the photographic showups went to the weight, not the admissibility, of their pre-trial and in-court identifications. *Id.*

Secondly, the mere fact that Smith and Davis were exposed to successive identification procedures of petitioner did not render their identifications of him unreliable. *See Williams v. Lavigne,* 209 F. App'x. 506, 508 (6th Cir. 2006) (Identification procedure, during which witness was shown several lineups and photo arrays, all of which contained defendant's picture, was not unduly suggestive).

In any event, the Michigan Court of Appeals rejected this portion of petitioner's claim because Smith and Davis both testified that their identifications were based not on seeing the photographs but from their observations of petitioner at the bar:

> Smith indicated that she based her identification of defendant at the corporeal lineup on having seen him at the club on the night of the shooting. She testified that she clearly saw his profile while he was exiting the bar and shooting into the air, and that she recognized him as he exited the bar because she saw him full in the face earlier in the evening. Likewise, Davis stressed that he recognized defendant in the lineup because he had looked him "dead in the eyes" as defendant grabbed his glasses. Both witnesses testified at the preliminary examination that they did not see defendant's photograph among those shown them by Officer Holmes. Given Smith's and Davis's testimony that they identified defendant in the corporeal lineup based on their observation of him at

7

> Chevelles, and their insistence that they did not recognize him in the photographic array, defendant has no basis for contending that the prior photographic array influenced the identification witnesses.

*People v. Thomas*, 2017 WL 378727, at * 2 (internal footnote omitted).

Petitioner next contends that the corporeal lineups were unduly suggestive because he was the only person in the corporeal lineups wearing a Chicago Bulls jersey, which he argues was similar to the Chicago Bulls hat that the shooting suspect wore. It is not unduly suggestive to require a suspect to wear the clothing he had on at the time of the criminal offense while participating in a lineup. *See United States v. Ball*, 381 F.2d 702, 703 (6th Cir. 1967) ( police lineup which was held a few hours after bank robbery and at which police required defendant, over objection, to wear his jacket, in which he was identified as the robber, was not suggestive and conducive to irreparable identification so as to deny him due process).

Petitioner finally claims that the live line-ups were unduly suggestive because he was the tallest person in the lineups, although he admits that the first lineup was conducted with the participants sitting down to minimize any prejudice. Petitioner claims that there was as much a six inch difference between himself and the other participants.

The Sixth Circuit has noted that "a height differential, standing alone, is usually not enough to make a lineup procedure suggestive." *Howard v. Bouchard,* 405 F.3d at 471 (discrepancy in height between defendant and other suspects in lineup did not render lineup impermissibly suggestive, even if defendant was three inches taller than others).

Finally, assuming that the pre-trial identification procedures were unduly suggestive, petitioner has failed to show, under the totality of circumstances, that the suggestiveness led to a substantial likelihood of an irreparable misidentification. Both witnesses testified that they got a good look at petitioner during the incident. Smith testified that she recognized petitioner

because she had seen him "full-face" earlier in the evening and saw his profile as he exited the bar. Davis testified that he was face-to-face with petitioner and looking at him "dead in the eyes." The bar's lights were on at the time of the shooting. The witnesses' descriptions of petitioner matched petitioner's appearance from the crowd photograph taken at Chevelles. Both witnesses were confident in their identification of petitioner. *People v. Thomas*, 2017 WL 378727, at * 3. These factors all support a finding that an independent basis existed for Smith's and Davis's in-court identifications of petitioner. *See Robertson v. Abramajtys,* 144 F. Supp. 2d 829, 847 (E.D. Mich. 2001).

Moreover, with respect to Smith's and Davis's attentiveness to the situation, courts tend to "place greater trust in witness identifications made during the commission of a crime because the witness has a reason to pay attention to the perpetrator." *Howard v. Bouchard,* 405 F.3d at 473. In light of the fact that Smith and Davis were witnessing a shooting, it was not unreasonable for the state courts to conclude that the witnesses paid a high degree of attention to petitioner. Finally, the reliability of Mr. Davis's and Ms. Smith's in-court identifications are supported by the fact that they testified that that they were positive that petitioner was the shooter. (Tr. 5/6/15, pp. 71-72, Tr. 5/7/15, pp. 36, 39); *Howard,* 405 F.3d at 473. Petitioner is not entitled to relief on his claim.

### B. Claim # 2. Ineffective assistance of trial counsel claim.

Petitioner next contends he was denied the effective assistance of trial counsel.

To show that he or she was denied the effective assistance of counsel under federal constitutional standards, a defendant must satisfy a two prong test. First, the defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment.

9

*Strickland v. Washington*, 466 U.S. 668, 687 (1984). In so doing, the defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. *Id*. In other words, petitioner must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy. *Strickland,* 466 U.S. at 689. Second, the defendant must show that such performance prejudiced his defense. *Id*. To demonstrate prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694.

Petitioner argues that trial counsel was ineffective for failing to investigate Davis's story in order to obtain evidence and witnesses that could have impeached Davis's testimony concerning the events on the night of the shooting. The Michigan Court of Appeals rejected petitioner's claim:

> Defendant maintains that Davis was not telling the whole truth. He argues that defense counsel deprived him of a substantial defense by failing to investigate Davis's story and background. Defendant argues that counsel could have more effectively impeached Davis's testimony if counsel had conducted a thorough investigation, including by verifying Davis's statement that he was stopped by police after purposefully speeding, and that the police summoned an ambulance for him. Defendant also contends that counsel should have interviewed other witnesses, including persons known as Dwight and Aaron, and the mother of Lataris Rucker, whom Davis tried to contact to inform her that Rucker had been shot. In addition, defendant argues that a more thorough impeachment of Davis, combined with "the weak nature" of the testimony by prosecution witness Marquis Lambert, would have provided an effective defense. Further, defendant argues that trial counsel was ineffective for failing to investigate other witnesses, referring to statements that officers gathered at Chevelles and passed on to the officer in charge.
>
> Defendant has failed to establish the factual predicate for his claim and to overcome the presumption that defense counsel's actions constituted sound trial strategy. Although Davis's credibility was an issue at trial, defendant has failed to provide factual support for his speculative assertion that defense counsel missed opportunities to impeach Davis's testimony. Defendant has not identified any evidence suggesting that police inquiries would have revealed that there was no

> police report corroborating Davis's testimony about the traffic stop, or that either Rucker's mother, Aaron, or Dwight could have provided information useful to impeaching Davis's testimony. In addition, although Lambert could not identify the shooter, his testimony that the shooter stole Davis's glasses and then fired his weapon was relevant to support the elements of the charged crimes of felony murder and assault with intent to commit murder, and defendant provides no basis for concluding that any additional impeachment of Davis would have been helpful in further undermining Lambert's testimony. Finally, defendant has not provided any offer of proof regarding relevant information to be obtained from interviewing witnesses whose statements were taken at Chevelles. Absent factual support for defendant's claim that further investigation of Davis or of other witnesses would have provided him with a substantial defense, we cannot conclude that defense counsel's assistance was constitutionally ineffective.

*People v. Thomas*, 2017 WL 378727, at * 4.

When defense counsel focuses on some issues to the exclusion of others, there is a strong presumption that he did so for tactical reasons, rather than through sheer neglect, and this presumption has particular force where an ineffective assistance of counsel claim is asserted by a federal habeas petitioner based solely on the trial record, where a reviewing court "may have no way of knowing whether a seemingly unusual or misguided action by counsel had a sound strategic motive." *See Yarborough v. Gentry*, 540 U.S. 1, 5-6 (2003) (quoting *Massaro v. United States*, 538 U.S. 500, 505 (2003)). Petitioner presented no evidence to the Michigan courts to rebut the presumption that trial counsel's decision to forego calling these witnesses or presenting this evidence was tactical.

Petitioner is also not entitled to relief on his claim because he failed to provide to the Michigan courts or to this Court affidavits from any of his proposed witnesses concerning their proposed testimony and willingness to testify on the petitioner's behalf. Conclusory allegations of ineffective assistance of counsel, without any evidentiary support, cannot support a claim for habeas relief. *See Workman v. Bell,* 178 F.3d 759, 771 (6th Cir. 1998). In failing to attach any offer of proof or any affidavits sworn by the proposed witnesses, petitioner offered, neither to the

Michigan courts nor to this Court, any evidence beyond his own assertions as to whether the witnesses would have testified and what the content of these witnesses' testimony would have been. Without such proof, petitioner is unable to establish that he was prejudiced by counsel's failure to call these witnesses to testify at trial, so as to support the second prong of an ineffective assistance of counsel claim. *See Clark v. Waller,* 490 F. 3d 551, 557 (6th Cir. 2007).

Moreover, the United States Supreme Court has held that habeas review under 28 U.S.C. §2254(d) is "limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). Therefore, *Cullen* would preclude the Court from considering any new evidence that petitioner would even want to present at this point in support of this portion of his ineffective assistance of trial counsel claim under 28 U.S.C. §2254(d). *Cf. Campbell v. Bradshaw*, 674 F.3d 578, 590, n.3 (6th Cir. 2012) (declining to consider testimony taken in federal evidentiary hearing because it was not part of the state court record). Petitioner presented no evidence to rebut the presumption that counsel's decision to forego calling these witnesses or presenting this evidence was strategic or that the outcome of the trial would have been different had these witnesses been called or the evidence presented. Petitioner is not entitled to relief on his second claim.

**C. Claim # 3. The sufficiency of evidence claim.**

Petitioner claims that there was insufficient evidence to support his felony murder conviction.

It is beyond question that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In Re Winship,* 397 U.S. 358, 364 (1970). But the critical inquiry on review of the sufficiency of the evidence to support a criminal conviction is, "whether

the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318 (1979). A court need not "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt." Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.* at 318-19 (internal citation and footnote omitted)(emphasis in the original).

A federal habeas court may not overturn a state court decision that rejects a sufficiency of the evidence claim merely because the federal court disagrees with the state court's resolution of that claim. Instead, a federal court may grant habeas relief only if the state court decision was an objectively unreasonable application of the *Jackson* standard. *See Cavazos v. Smith,* 565 U.S. 1, 2 (2011). "Because rational people can sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold." *Id.* Indeed, for a federal habeas court reviewing a state court conviction, "the only question under *Jackson* is whether that finding was so insupportable as to fall below the threshold of bare rationality." *Coleman v. Johnson*, 566 U.S. 650, 656 (2012). A state court's determination that the evidence does not fall below that threshold is entitled to "considerable deference under [the] AEDPA." *Id.*

Under Michigan law, the elements of first-degree felony murder are:

(1) the killing of a human being;
(2) with an intent to kill, to do great bodily harm, or to create a high risk of death or great bodily harm with knowledge that death or great bodily harm is the probable result (i.e., malice);
(3) while committing, attempting to commit, or assisting in the commission of one of the felonies enumerated in the felony murder statute.

*Matthews v. Abramajtys*, 319 F. 3d 780, 789 (6th Cir. 2003) (c*iting to People v. Carines*, 460 Mich. 750, 759; 597 N.W. 2d 130 (1999)).

Petitioner contends that there was insufficient evidence to convict him of first-degree felony murder because the jury was not instructed that the underlying felony in this case was larceny or instructed on the elements of larceny. This part of petitioner's claim is without merit because the jury was instructed that the predicate felony here was larceny and was advised of the elements for this offense. *People v. Thomas*, 2017 WL 378727, at * 5 (Tr. 5/11/15, p. 79).

Petitioner next claims that there was insufficient evidence to convict him of first-degree felony murder because he was not separately charged with or convicted of the larceny offense. The Michigan Court of Appeals rejected this portion of petitioner's claim:

> The [first-degree murder] statute does not require that a defendant be charged with or convicted of a predicate offense to be convicted of felony murder.

*People v. Thomas*, 2017 WL 378727, at * 4.

The Michigan Court of Appeals has previously held that Michigan's felony-murder statute does not require that the defendant be charged and convicted of the underlying felony to sustain a felony-murder conviction. *See People v. Seals*, 285 Mich. App. 1, 16, 776 N.W.2d 314 (2009).

The United States Supreme Court has "repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005). State courts are the "ultimate expositors of state law." *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975). What is essential to establish an element of a crime, like the question whether a given element is necessary, is a question of state law, of which federal habeas review is not available. *See Sanford v. Yukins*, 288 F.3d 855, 862 (6th Cir. 2002). Moreover, a federal court on habeas review must

distinguish a sufficiency of evidence claim from state law claims which are disguised as *Jackson* claims. *Id.* (citing *Bates v. McCaughtry*, 934 F.2d 99, 103 (7th Cir. 1991)). This Court must therefore defer to the Michigan Court of Appeals' construction of the elements of state crimes and possible defenses. *See e.g. Coe v. Bell*, 161 F.3d 320, 347 (6th Cir. 1998). Petitioner would therefore not be entitled to challenge the Michigan Court of Appeals' legal determination that it was unnecessary to separately charge and convict petitioner of the underlying larceny charge to sustain his felony murder conviction.

Petitioner lastly argues that there was insufficient evidence to support his felony murder conviction because only a felony larceny can serve as the predicate offense for felony murder and the jury was never instructed that the item that was allegedly stolen had to have a value of at least $1,000. The Michigan Court of Appeals rejected this claim, finding that under Michigan law, larceny of any kind, including misdemeanor larceny, supports a felony murder conviction. *People v. Thomas,* 2017 WL 378727, at * 5.

The Michigan courts have repeatedly held that a murder committed during the perpetration of 'larceny of any kind' is first-degree felony murder in Michigan, even where the underlying larceny is a misdemeanor offense. *See People v. Malach,* 202 Mich. App. 266, 269; 507 N.W.2d 834 (1993); *People v. Williams,* 129 Mich.App. 362, 368; 341 N.W.2d 143 (1983), *rev'd on other grounds* 422 Mich. 381; 373 N.W.2d 567 (1985); *People v. Hawkins*, 114 Mich. App. 714, 717; 319 N. W. 2d 644 (1982). The Michigan appellate courts' determination that a misdemeanor larceny qualifies as the predicate offense for felony murder is binding on this Court, thus, petitioner is not entitled to relief on this claim. *See Williams v. Lecureux*, 9 F.3d 111; 1993 WL 445090, * 3 (6th Cir. Nov. 2, 1993).

### IV. Conclusion

15

The Court will deny the petition for writ of habeas corpus. The Court will also deny a certificate of appealability to petitioner. In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484. "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254; *See also Strayhorn v. Booker,* 718 F. Supp. 2d 846, 854 (E.D. Mich. 2010).

The Court will deny petitioner a certificate of appealability because he failed to make a substantial showing of the denial of a federal constitutional right. *See also Millender v. Adams,* 187 F. Supp. 2d 852, 880 (E.D. Mich. 2002). The Court further concludes that petitioner should not be granted leave to proceed *in forma pauperis* on appeal, as any appeal would be frivolous. *See* Fed.R.App. P. 24(a).

## V. ORDER

Based upon the foregoing, **IT IS ORDERED** that:

(1) The petition for a writ of habeas corpus is **DENIED WITH PREJUDICE.**

(2) A certificate of appealability is **DENIED.**

(3) Petitioner will be denied leave to appeal *in forma pauperis*.

                                                                    <u>s/Sean F. Cox</u>
                                                                    Sean F. Cox
                                                                    United States District Judge

Dated: March 25, 2019

      I hereby certify that a copy of the foregoing document was served upon counsel of record on March 25, 2019, by electronic and/or ordinary mail.

                                                                    <u>s/Jennifer McCoy</u>
                                                                    Case Manager